FRANK FRISENDA (STATE BAR # 85580)
FRISENDA QUINTON & NICHOLSON
11601 WILSHIRE BLVD 5TH FLOOR
LOS ANGELES, CA 90025
TEL: 702 -792-3910
FAX 702-436-4176
frankfrisenda@aol.com
Attorneys for Plaintiff
WATER CONSERVATION
TECHNOLOGY INTERNATIONAL,INC

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **WATER CONSERVATION TECHNOLOGY INTERNATIONAL, INC., a Nevada corporation,**<br><br>     **Plaintiff**<br><br>vs.<br><br>**ROSEBURG FOREST PRODUCTS CO., an Oregon corporation; and DOES 1-10, inclusive**<br><br>     **Defendants** | Case No.<br><br>**COMPLAINT FOR PATENT INFRINGEMENT:**<br>     **U.S. PATENT NOS. 6,929,749, 6,949,193, 6,998,092, 7,122,148 AND 7,517,493**<br><br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff, Water Conservation Technology International, Inc. ("WCTI" or "Plaintiff"), for its Complaint against Defendant Roseburg Forest Products Co. ("Roseburg" or "Defendant") and DOES 1 through 10, inclusive, states and alleges as follows:

Plaintiff seeks treble damages arising from Defendant's willful infringement of

1

**COMPLAINT FOR PATENT INFRINGEMENT & TREBLE DAMAGES**

the patents-in-suit as set forth in this Complaint.

## THE PARTIES

1.    Plaintiff, Water Conservation Technology International, Inc. is a corporation organized and existing under the laws of the State of Nevada, and having a principal place of business at 31805 Highway 79 South, #622, Temecula, California 92592.

2.    Upon information and belief, Defendant Roseburg Forest Products Co. is a corporation organized and existing under the laws of the State of Oregon, and having a principal place of business at 10599 Old Hwy 99 S., Dillard, Oregon 97432.

3.    The true names and capacities of the Defendants named herein as DOES 1 through 10, whether individual, corporate, associate, or otherwise, are unknown to Plaintiff, who therefore sues said Defendants by said fictitious names. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants designated herein as DOE is legally responsible for the events and happenings hereinafter alleged and legally caused injury and damages proximately thereby to Plaintiff as herein alleged. Plaintiff will seek leave to amend the Complaint when the true names and capacities of said DOE Defendants have been ascertained.

4.    Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants participated in and is in some manner responsible for the acts described in this Complaint and any damages resulting therefrom.

5.    Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants has acted in concert and participation with each other concerning each of the claims in this Complaint.

6.    Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants were empowered to act as the agent, servant and/or employees of each of the other Defendants, and that all the acts alleged to have been done by each of them were authorized, approved and/or ratified by each of the other Defendants.

2

## JURISDICTION AND VENUE

7.     This action, as hereinafter more fully appears, arises under the patent laws of the United States of America (35 U.S.C. §§1 *et seq.*), and is for patent infringement.  This Court has subject matter jurisdiction for all counts pursuant to 28 U.S.C. §§1331, 1338(a) and (b).

8.     Venue is proper under 28 U.S.C. §§1391(b) and 1400(b), as a substantial part of the events or omissions giving rise to Plaintiff's claims, to wit, Defendant's acts of infringement occurred in this district. Venue is further proper pursuant to 28 U.S.C. §§1391(a)(1)-(3) and (c) on the grounds that the Defendant is subject to personal jurisdiction in this judicial district, as Plaintiff is informed and believes and based thereon alleges that Defendant transacts business in this judicial district.

## BACKGROUND OF THE CONTROVERSY

9.     Plaintiff WCTI is a pioneer in sustainable and innovative water conservation technology to alleviate water scarcity challenges for commercial, high tech, industrial, and energy production businesses which consume vast quantities of fresh water for critical cooling needs.  As a result of its substantial investment in research and development of water conservation technology, WCTI has been duly and legally issued a number of United States Patents which give WCTI the exclusive right to make, use, sell, or offer for sale within the United States, or import into the United States, a number of patented technologies for treating water in an environmentally friendly manner.

10.     WCTI's patented technologies have been met with great success in the marketplace, with licensees of WCTI's patented technologies typically seeing substantial reductions in the amount of fresh water they consume and the amount of wastewater they discharge.  Licensees of WCTI's patented technologies are not only

COMPLAINT FOR PATENT INFRINGEMENT & TREBLE DAMAGES

able to greatly reduce their ecological footprint, but also are able to realize a substantial cost savings relative to the available alternatives.

11.     On August 16, 2005, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,929,749 ("the '749 Patent") entitled "Cooling Water Scale and Corrosion Inhibition." A true and correct copy of the '749 Patent is attached hereto as Exhibit 1. WCTI owns all substantial right, title and interest in the '749 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

12.     On September 27, 2005, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,949,193 ("the '193 Patent") entitled "Cooling Water Scale and Corrosion Inhibition." A true and correct copy of the '193 Patent is attached hereto as Exhibit 2. WCTI owns all substantial right, title and interest in the '193 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

13.     On February 14, 2006, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,998,092 ("the '092 Patent") entitled "Cooling Water Scale and Corrosion Inhibition." A true and correct copy of the '092 Patent is attached hereto as Exhibit 3. WCTI owns all substantial right, title and interest in the '092 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

14.     On October 17, 2006, the United States Patent and Trademark Office duly and legally issued United States Patent No. 7,122,148 ("the '148 Patent") entitled "Cooling Water Scale and Corrosion Inhibition." A true and correct copy of the '148 Patent is attached hereto as Exhibit 4. WCTI owns all substantial right, title and interest in the '148 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

15.     On April 14, 2009, the United States Patent and Trademark Office duly and legally issued United States Patent No. 7,517,493 ("the '493 Patent") entitled

4

"Cooling Water Corrosion Inhibition Method." A true and correct copy of the '493 Patent is attached hereto as Exhibit 5. WCTI owns all substantial right, title and interest in the '493 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

16. On information and belief, Defendant Roseburg is one of the largest wood products companies in the nation, owning and cultivating over 640,000 acres of timberland in Oregon and California, and owning and operating a number of lumber mills across the nation.

17. Upon information and belief, Roseburg has had a longstanding presence in the city of Weed, California, a community of about 3,000 people located approximately 25 miles south of the Oregon border. Roseburg owns and operates a softwood veneer plant in Weed, and is one of, if not the largest employer in the community.

18. The people of the city of Weed have, for many generations, had an enduring association with the lumber industry. As a historic logging community, Weed was an important hub for many lumber companies, and for a time was the location of the world's largest sawmill. Unfortunately, as of result of its lumber heritage, Weed is also the location of the 205 acre J.H Baxter/International Paper/Roseburg Forest Products Superfund Site, where chemicals used to treat wood, including arsenic, have been contaminating the groundwater since 1937. This Superfund Site was placed on the Superfund National Priority List in 1989, and over $15 million has been spent on cleanup costs to date.

19. Upon information and belief, Roseburg also operates a biomass cogeneration plant in Weed, where waste wood materials from Roseburg's forestry and mill operations are recycled to generate heat and electricity for Roseburg's mill and the local community. Upon information and belief, Roseburg promotes its biomass cogeneration plant as a prominent example of its present-day commitment to recycling, clean energy production, and environmental stewardship and sustainability.

5

COMPLAINT FOR PATENT INFRINGEMENT & TREBLE DAMAGES

20.    On or about April 15, 2010, in response to a request by Robin Styers, Defendant Roseburg's Boiler Operations Manager in Weed, California, Plaintiff WCTI, by and through its authorized distributor Weschem Inc.(now, Yoydyne Propulsion Systems), provided to Roseburg a Cooling Tower Treatment Proposal. The Proposal set forth Plaintiff's water treatment solution to be used at the cooling tower of Roseburg's biomass cogeneration plant. WCTI's Proposal estimated that its patented technologies would reduce water consumption at Roseburg's plant by approximately 24.6 million gallons per year. Defendant was put on express notice that the Proposal was using ***patented technology developed by WCTI*** research. (emphasis added) (See Cover Letter to Defendant with Proposal; Exhibit 6 hereto)

21.    Plaintiff's Proposal to Defendant Roseburg provided a quotation for the purchase and installation of WCTI's equipment, and a quotation for the monthly service and license fee. The identified equipment included two high efficiency water softener units, water softener kits with an optional regeneration process monitoring system, a high efficiency filter and related accessories. The pricing for a separate monthly service and license fee was stated as $4,850 per month. The Proposal further provided for real-time online monitoring by WCTI of its water treatment system, which permits remote monitoring and analysis of its performance, as well as enabling an immediate response to any equipment failures. .

22.    Defendant Roseburg agreed to the terms set forth in the Proposal, ("the Agreement") including but not limited to an agreement to pay a monthly service and license/usage fee of $4,850 per month.

23.    The High Efficiency Softening and High Efficiency Filtration equipment purchased by RFP can be used for any traditional pretreatment application that requires soft water to avoid scale or other desired water quality benefits, such as boiler makeup and domestic hot water systems in hospitals or buildings.

6

**COMPLAINT FOR PATENT INFRINGEMENT & TREBLE DAMAGES**

WCTI equipment, like commodity softening and filtration equipment, can and has been used for tower makeup to avoid hardness scales outside of WCTI patent chemistry ranges. These conventional applications do not infringe on WCTI process patents-in-suit.

24. Plaintiff performed all of its obligations under the Agreement, for the initial 24-month minimum contract term and thereafter until Defendant's termination in March 2015.

25. During the term of the Agreement Defendant learned the details of Plaintiff's patented technology and the significant benefits achieved thereby. (Exhibit 7 is a true and correct copy of Plaintiff's *Cooling Tower Inspection Report* of July 2012 provided to Defendant). Page 5 of this Inspection Report noted '*The water savings from August 2011 is just over 14.5 million gallons*" (emphasis added).

26. In March 2015, Defendant stated that it had terminated the contract between the parties and would thus cease paying to WCTI any monthly service and license fees.

27. However, upon information and belief, Roseburg has continued and still continues to practice WCTI's patented technologies for treating the cooling tower water at its biomass cogeneration plant without authorization.

28. In more detail, Plaintiff created for Roseburg a site-specific manual and equipment for monitoring all phases of the WCTI water treatment program encompassing practice of the methods of WCTI's patented technology. The results from such monitoring indicates that Roseburg continues to practice WCTI's patented technologies. Defendant's water consumption was reduced from 192,000 gallons per day to 125,000 gallons per day, while eliminating 67,000 gallons of day of discharge waste water, using WCTI technology.

29. Defendant Roseburg has infringed and continues to infringe upon WCTI's patented technology by using one or more of the claimed methods of the

7

**COMPLAINT FOR PATENT INFRINGEMENT & TREBLE DAMAGES**

'749, '193, '092, '148, and/or '493 patents in the United States, without authorization.

30. Defendant was aware of Plaintiff's U.S. Patent Nos. 6,929,749, 6,949,193, 6,998,092, 7,122,148 and 7,517,493 before September of 2015.

31. At least as early as September of 2015, Plaintiff gave written notice to Defendant that the continued use of Plaintiff's patented processes without payment for that use constituted infringement of those patents. (Exhibits 1-5 hereto)

## FIRST CLAIM FOR RELIEF

### (Patent Infringement of U.S. Patent No. 6,929,749)

32. Plaintiff re-alleges and repeats the allegations of paragraphs 1-31 and incorporates them herein by reference.

33. Plaintiff is the owner of all right, title and interest to United States Patent No. 6,929,749 entitled "Cooling Water Scale and Corrosion Inhibition." The '749 Patent was duly and lawfully issued on August 16, 2005 and is presently valid and in full effect.

34. Claim 1 of the '749 Patent reads:

"1. A method for controlling silica or silicate scale formation in an aqueous cooling water system with silica contributed by source water, comprising the steps:

    a) removing hardness ions from said source water fed to said system;

    b) controlling the conductivity of the aqueous system water such that said aqueous system water possesses a conductivity from approximately 10,000 to 150,000 μmhos, wherein said

**COMPLAINT FOR PATENT INFRINGEMENT & TREBLE DAMAGES**

aqueous system water contains soluble $SiO_2$ in excess of 200 mg/L;

c) elevating and maintaining the pH of said aqueous system water such that said aqueous system water possesses a pH of approximately 9.0 or greater; and

d) providing a metallic heat transfer surface in said system and cyclically contacting said aqueous system water thereabout, wherein said pH increases the solubility of said silica and controls silica or silicate scale formation on said metallic heat transfer surface."

35. Upon information and belief, Defendant has been and continues to infringe the '749 Patent within this district at least by practicing each and every step of Claim 1, of the '749 Patent without authorization from WCTI.

36. Upon information and belief, Defendant controls silica or silicate scale formation in the aqueous cooling water system at its biomass cogeneration plant, with silica being contributed by source water. WCTI believes this because its online monitoring system indicates that Defendant continues to operate the cooling water treatment system installed by WCTI and/or its authorized distributors or agents, with such monitoring indicating the source water fed into the system contributes silica, with such silica associated silicate scale formation being controlled by the cooling water treatment system.

37. Upon information and belief, Defendant removes hardness ions from the source water fed into the aqueous cooling water system at its biomass cogeneration plant. WCTI believes this because its online monitoring system indicates that Defendant continues to operate the cooling water treatment system installed by WCTI and/or its authorized distributors or agents, with such monitoring indicating that hardness ions are being removed from the source water fed into the cooling water treatment system.

9

COMPLAINT FOR PATENT INFRINGEMENT & TREBLE DAMAGES

38.   Upon information and belief, Defendant controls the water within its aqueous cooling water system to possess conductivity from approximately 10,000 to 150,000 μmhos, with the water containing soluble $SiO_2$ in excess of 200 mg/L. WCTI believes this because its online monitoring system indicates that Defendant continues to operate the cooling water treatment system installed by WCTI and/or its authorized distributors or agents, with such monitoring indicating that that the water within the system contains $SiO_2$ in excess of 200 mg/L and is being controlled to possess conductivity from approximately 10,000 to 150,000 μmhos.

39.   Upon information and belief, Defendant elevates and maintains the pH of the water within its aqueous cooling water system such that the water possesses a pH of approximately 9.0 or greater.   WCTI believes this because its online monitoring system indicates that Defendant continues to operate the cooling water treatment system installed by WCTI and/or its authorized distributors or agents, with such monitoring indicating that the pH of the water is being elevated and maintained at a pH of 9.0 or greater.

40.   Upon information and belief, Defendant provides a metallic heat transfer surface in its aqueous cooling water system and cyclically contacts the aqueous system water thereabout, with the elevated pH increasing the solubility of the silica and controlling silica or silicate scale formation on the metallic heat transfer surface. WCTI believes this because the cooling water treatment system installed by WCTI and/or its authorized distributors or agents operates by cyclically contacting the aqueous system water with a metallic heat transfer surface, and WCTI's online monitoring system indicates that Defendant continues to cyclically contact the aqueous system water about a metallic heat transfer surface, with the aforementioned elevated pH increasing solubility of the silica and controlling silica or silicate scale formation on the metallic heat transfer surface.

41.   The continuing infringement of the '749 Patent by Defendant after receiving notice of the '749 Patent is willful, entitling Plaintiff to enhanced damages.

COMPLAINT FOR PATENT INFRINGEMENT & TREBLE DAMAGES

42.     Upon information and belief, by the acts of patent infringement herein complained of, Defendant has made substantial profits to which it is not equitably entitled.

43.     By reason of the aforementioned acts of Defendant, Plaintiff has suffered great detriment in a sum which exceeds this Court's jurisdictional amount, but which cannot be ascertained at this time.

44.     Upon information and belief, Defendants continue to infringe Plaintiff's '749 Patent, and will continue to infringe Plaintiff's '749 Patent to Plaintiff's irreparable harm, unless enjoined by this Court.

## SECOND CLAIM FOR RELIEF

### (Patent Infringement of U.S. Patent No. 6,949,193)

45.     Plaintiff re-alleges and repeats the allegations of paragraphs 1-44 and incorporates them herein by reference.

46.     Plaintiff is the owner of all right, title and interest to United States Patent No. 6,949,193 entitled "Cooling Water Scale and Corrosion Inhibition."  The '193 Patent was duly and lawfully issued on September 27, 2005 and is presently valid and in full effect.

47.     Claim 1 of the '193 Patent reads:

"1. A method for controlling silica or silicate scale formation in an

aqueous cooling water system with silica contributed by source water,

comprising the steps:

a) removing hardness ions from said source water fed to said

system;

b) controlling the conductivity of the aqueous system water

such that said aqueous system water possesses a conductivity of

**COMPLAINT FOR PATENT INFRINGEMENT & TREBLE DAMAGES**

at least 1 µmhos, wherein said aqueous system water contains soluble $SiO_2$ in excess of 200 mg/L;

c) elevating and maintaining the pH of said aqueous system water such that said aqueous system water possesses a pH of approximately 9.0 or greater; and

d) providing a metallic heat transfer surface in said system and cyclically contacting said aqueous system water thereabout, wherein said pH increases the solubility of said silica and controls silica or silicate scale formation on said metallic heat transfer surface."

48. Upon information and belief, Defendant has been and continues to infringe the '092 Patent within this district at least by practicing each and every step of Claim 1 of the '092 Patent without authorization from WCTI.

49. Upon information and belief, Defendant controls silica or silicate scale formation in the aqueous cooling water system at its biomass cogeneration plant, with silica being contributed by source water. WCTI believes this because its online monitoring system indicates that Defendant continues to operate the cooling water treatment system installed by WCTI and/or its authorized distributors or agents, with such monitoring indicating the source water fed into the system contributes silica, with such silica associated silicate scale formation being controlled by the cooling water treatment system.

50. Upon information and belief, Defendant removes hardness ions from the source water fed into the aqueous cooling water system at its biomass cogeneration plant. WCTI believes this because its online monitoring system indicates that Defendant continues to operate the cooling water treatment system installed by WCTI and/or its authorized distributors or agents, with such monitoring indicating that hardness ions are being removed from the source water fed into the cooling water treatment system.

COMPLAINT FOR PATENT INFRINGEMENT & TREBLE DAMAGES

51.     Upon information and belief, Defendant controls the water within its aqueous cooling water system to possess conductivity of at least 1 µmhos, with the water containing soluble $SiO_2$ in excess of 200 mg/L.   WCTI believes this because its online monitoring system indicates that Defendant continues to operate the cooling water treatment system installed by WCTI and/or its authorized distributors or agents, with such monitoring indicating that that the water within the system contains $SiO_2$ in excess of 200 mg/L and is being controlled to possess conductivity of at least 1 µmhos.

52.     Upon information and belief, Defendant elevates and maintains the pH of the water within its aqueous cooling water system such that the water possesses a pH of approximately 9.0 or greater.   WCTI believes this because its online monitoring system indicates that Defendant continues to operate the cooling water treatment system installed by WCTI and/or its authorized distributors or agents, with such monitoring indicating that the pH of the water is being elevated and maintained at a pH of 9.0 or greater.

53.     Upon information and belief, Defendant provides a metallic heat transfer surface in its aqueous cooling water system and cyclically contacts the aqueous system water thereabout, with the elevated pH increasing the solubility of the silica and controlling silica or silicate scale formation on the metallic heat transfer surface. WCTI believes this because the cooling water treatment system installed by WCTI and/or its authorized distributors or agents operates by cyclically contacting the aqueous system water with a metallic heat transfer surface, and WCTI's online monitoring system indicates that Defendant continues to cyclically contact the aqueous system water about a metallic heat transfer surface, with the aforementioned elevated pH increasing solubility of the silica and controlling silica or silicate scale formation on the metallic heat transfer surface.

54.     The continuing infringement of the '193 Patent by Defendant after receiving notice of the '193 Patent is willful, entitling Plaintiff to enhanced damages.

55. Upon information and belief, by the acts of patent infringement herein complained of, Defendant has made substantial profits to which it is not equitably entitled.

56. By reason of the aforementioned acts of Defendant, Plaintiff has suffered great detriment in a sum which exceeds this Court's jurisdictional amount, but which cannot be ascertained at this time.

57. Upon information and belief, Defendants continue to infringe Plaintiff's '193 Patent, and will continue to infringe Plaintiff's '193 Patent to Plaintiff's irreparable harm, unless enjoined by this Court.

## THIRD CLAIM FOR RELIEF
### (Patent Infringement of U.S. Patent No. 6,998,092)

58. Plaintiff re-alleges and repeats the allegations of paragraphs 1-57 and incorporates them herein by reference.

59. Plaintiff is the owner of all right, title and interest to United States Patent No. 6,998,092 entitled "Cooling Water Scale and Corrosion Inhibition." The '092 Patent was duly and lawfully issued on February 14, 2006 and is presently valid and in full effect.

60. Claim 1 of the '092 Patent reads:

"1. A method for inhibiting corrosion of a metallic substance in an aqueous cooling water system containing soluble $SiO_2$ of greater than 10 mg/L wherein said aqueous system derives water from make-up source water, comprising the steps:

a) removing hardness ions from said source water;

b) controlling the ionic strength of the aqueous system water such that said aqueous system water possesses a measurable conductivity of at least 1 $\mu$mhos;

14

c) elevating and maintaining the pH of said aqueous system water such that said aqueous system water possesses a pH of approximately 9.0 or greater; and

d) cyclically contacting said aqueous system water with said metallic substance, wherein said pH and ionic strength increases the amount of soluble silica in the multimeric form present in said aqueous system water and inhibits corrosion of said metallic substance."

61.    Upon information and belief, Defendant has been and continues to infringe the '092 Patent within this district at least by practicing each and every step of Claim 1 of the '092 Patent without authorization from WCTI.

62.    Upon information and belief, Defendant inhibits corrosion of a metallic substance in the aqueous cooling water system at its biomass cogeneration plant, which contains soluble $SiO_2$ of greater than 10 mg/L, with the aqueous cooling water system deriving water from make-up source water. WCTI believes this because its online monitoring system indicates that Defendant continues to operate the cooling water treatment system installed by WCTI and/or its authorized distributors or agents, which inhibited corrosion of a metallic substance and derived water from make-up source water, with such monitoring indicating that the water contains soluble $SiO_2$ greater than 10 mg/L.

63.    Upon information and belief, Defendant removes hardness ions from the source water fed into the aqueous cooling water system at its biomass cogeneration plant. WCTI believes this because its online monitoring system indicates that Defendant continues to operate the cooling water treatment system installed by WCTI and/or its authorized distributors or agents, with such monitoring indicating that hardness ions are being removed from the source water fed into the cooling water treatment system.

64.    Upon information and belief, Defendant controls the water within its

**COMPLAINT FOR PATENT INFRINGEMENT & TREBLE DAMAGES**

aqueous cooling water system to possess a measurable conductivity of at least 1 μmhos. WCTI believes this because its online monitoring system indicates that Defendant continues to operate the cooling water treatment system installed by WCTI and/or its authorized distributors or agents, with such monitoring indicating that that the water within the system is being controlled to possess a measurable conductivity of at least 1 μmhos.

65. Upon information and belief, Defendant elevates and maintains the pH of the water within its aqueous cooling water system such that the water possesses a pH of approximately 9.0 or greater. WCTI believes this because its online monitoring system indicates that Defendant continues to operate the cooling water treatment system installed by WCTI and/or its authorized distributors or agents, with such monitoring indicating that the pH of the water is being elevated and maintained at a pH of 9.0 or greater.

66. Upon information and belief, Defendant provides a metallic substance in its aqueous cooling water system and cyclically contacts the aqueous system water that metallic substance, with the elevated pH and the ionic strength of at least 1 μmhos increasing the amount of soluble silica in the multimeric form and inhibiting corrosion of that metallic substance. WCTI believes this because the cooling water treatment system installed by WCTI and/or its authorized distributors or agents operates by cyclically contacting the aqueous system water with at least a metallic heat transfer surface which is a metallic substance, and WCTI's online monitoring system indicates that Defendant continues to cyclically contact the aqueous system water with the metallic heat transfer surface, with the aforementioned elevated pH and ionic strength of at least 1 μmhos increasing the amount of soluble silica in the multimeric form in the system water and inhibiting corrosion of the metallic heat transfer surface.

67. The continuing infringement of the '092 Patent by Defendant after receiving notice of the '092 Patent is willful, entitling Plaintiff to enhanced damages.

COMPLAINT FOR PATENT INFRINGEMENT & TREBLE DAMAGES

68. Upon information and belief, by the acts of patent infringement herein complained of, Defendant has made substantial profits to which it is not equitably entitled.

69. By reason of the aforementioned acts of Defendant, Plaintiff has suffered great detriment in a sum which exceeds this Court's jurisdictional amount, but which cannot be ascertained at this time.

70. Upon information and belief, Defendants continue to infringe Plaintiff's '092 Patent, and will continue to infringe Plaintiff's '092 Patent to Plaintiff's irreparable harm, unless enjoined by this Court.

## FOURTH CLAIM FOR RELIEF
### (Patent Infringement of U.S. Patent No. 7,122,148)

71. Plaintiff re-alleges and repeats the allegations of paragraphs 1-70 and incorporates them herein by reference.

72. Plaintiff is the owner of all right, title and interest to United States Patent No. 7,122,148 entitled "Cooling Water Scale and Corrosion Inhibition." The '148 Patent was duly and lawfully issued on October 17, 2006 and is presently valid and in full effect.

73. Claim 1 of the '148 Patent reads:

"1. A method for inhibiting corrosion of a metallic substance in an aqueous cooling water system containing soluble $SiO_2$ of greater than 200 mg/L wherein said aqueous system derives water from make-up source water, comprising the steps:

a) removing hardness ions from said source water;

b) controlling the ionic strength of the aqueous system water such that said aqueous system water possesses a conductivity from approximately 10,000 to 150,000 µmhos;

17

c) elevating and maintaining the pH of said aqueous system water such that said aqueous system water possesses a pH of approximately 9.0 or greater; and

d) cyclically contacting said aqueous system water with said metallic substance, wherein said pH and ionic strength increases the amount of soluble silica in the multimeric form present in said aqueous system water and inhibits corrosion of said metallic substance."

74.     Upon information and belief, Defendant has been and continues to infringe the '148 Patent within this district at least by practicing each and every step of Claim 1 of the '148 Patent without authorization from WCTI.

75.     Upon information and belief, Defendant inhibits corrosion of a metallic substance in the aqueous cooling water system at its biomass cogeneration plant, which contains soluble $SiO_2$ of greater than 200 mg/L, with the aqueous cooling water system deriving water from make-up source water.  WCTI believes this because its online monitoring system indicates that Defendant continues to operate the cooling water treatment system installed by WCTI and/or its authorized distributors or agents, which inhibited corrosion of a metallic substance and derived water from make-up source water, with such monitoring indicating that the water contains soluble $SiO_2$ greater than 200 mg/L.

76.     Upon information and belief, Defendant removes hardness ions from the source water fed into the aqueous cooling water system at its biomass cogeneration plant.  WCTI believes this because its online monitoring system indicates that Defendant continues to operate the cooling water treatment system installed by WCTI and/or its authorized distributors or agents, with such monitoring indicating that hardness ions are being removed from the source water fed into the cooling water treatment system.

77.     Upon information and belief, Defendant controls the water within its

18

aqueous cooling water system to possess a conductivity from approximately 10,000 to 150,000 μmhos. WCTI believes this because its online monitoring system indicates that Defendant continues to operate the cooling water treatment system installed by WCTI and/or its authorized distributors or agents, with such monitoring indicating that that the water within the system is being controlled to possess a conductivity from approximately 10,000 to 150,000 μmhos.

78. Upon information and belief, Defendant elevates and maintains the pH of the water within its aqueous cooling water system such that the water possesses a pH of approximately 9.0 or greater. WCTI believes this because its online monitoring system indicates that Defendant continues to operate the cooling water treatment system installed by WCTI and/or its authorized distributors or agents, with such monitoring indicating that the pH of the water is being elevated and maintained at a pH of 9.0 or greater.

79. Upon information and belief, Defendant provides a metallic substance in its aqueous cooling water system and cyclically contacts the aqueous system water that metallic substance, with the elevated pH and the ionic strength of at approximately 10,000 to 150,000 μmhos increasing the amount of soluble silica in the multimeric form and inhibiting corrosion of that metallic substance. WCTI believes this because the cooling water treatment system installed by WCTI and/or its authorized distributors or agents operates by cyclically contacting the aqueous system water with at least a metallic heat transfer surface which is a metallic substance, and WCTI's online monitoring system indicates that Defendant continues to cyclically contact the aqueous system water with the metallic heat transfer surface, with the aforementioned elevated pH and ionic strength of approximately 10,000 to 150,000 μmhos increasing the amount of soluble silica in the multimeric form in the system water and inhibiting corrosion of the metallic heat transfer surface.

80. The continuing infringement of the '148 Patent by Defendant after receiving notice of the '148 Patent is willful, entitling Plaintiff to enhanced damages.

19

81.    Upon information and belief, by the acts of patent infringement herein complained of, Defendant has made substantial profits to which it is not equitably entitled.

82.    By reason of the aforementioned acts of Defendant, Plaintiff has suffered great detriment in a sum which exceeds this Court's jurisdictional amount, but which cannot be ascertained at this time.

83.    Upon information and belief, Defendants continue to infringe Plaintiff's '148 Patent, and will continue to infringe Plaintiff's '148 Patent to Plaintiff's irreparable harm, unless enjoined by this Court.

## FIFTH CLAIM FOR RELIEF
### (Patent Infringement of U.S. Patent No. 7,517,493)

84.    Plaintiff re-alleges and repeats the allegations of paragraphs 1-83 and incorporates them herein by reference.

85.    Plaintiff is the owner of all right, title and interest to United States Patent No. 7,517,493 entitled "Cooling Water Corrosion Inhibition Method." The '493 Patent was duly and lawfully issued on April 14, 2009 and is presently valid and in full effect.

86.    Claim 1 of the '493 Patent reads:

"1. A method for inhibiting corrosion of a metallic substrate in an

aqueous system wherein said aqueous system derives water, and silica

contributed by source water, from make-up source water, the method

of the present invention comprising the steps:

    a) removing polyvalent metal (PVM) ions from said source

    water;

    b) controlling the monovalent metal (MVM) ion concentration

    of the aqueous system water such that said aqueous system

20

**COMPLAINT FOR PATENT INFRINGEMENT & TREBLE DAMAGES**

water possesses an MVM ion concentration that exceeds the soluble silica concentration;

c) elevating and maintaining the pH of said aqueous system water such that said aqueous system water possesses a pH of approximately 7.0 or greater; and

d) concentrating said source water and its natural silica content by evaporation of makeup water in an aqueous system wherein the system water temperature is higher than the makeup water temperature, and said system water is circulated in contact with heat transfer surfaces that elevate such portion of water to even higher temperatures; wherein

e) performing steps a)-d) operatively transforms said natural silica content to corrosion inhibiting silica forms."

87.     Upon information and belief, Defendant has been and continues to infringe the '493 Patent within this district at least by practicing each and every step of Claim 1 of the '493 Patent without authorization from WCTI.

88.     Upon information and belief, Defendant inhibits corrosion of a metallic substrate in the aqueous cooling water system at its biomass cogeneration plant, with the aqueous system deriving water, and silica contributed by source water, from make-up source water.   WCTI believes this because its online monitoring system indicates that Defendant continues to operate the cooling water treatment system installed by WCTI and/or its authorized distributors or agents, which derived water, and silica contributed by source water, from make-up source water, and when operated in accordance with WCTI's instructions, inhibited corrosion of a metallic substrate.

89.     Upon information and belief, Defendant removes PVM ions from the source water fed into the aqueous cooling water system at its biomass cogeneration

plant. WCTI believes this because its online monitoring system indicates that Defendant continues to operate the cooling water treatment system installed by WCTI and/or its authorized distributors or agents, with such monitoring indicating that PVM ions are being removed from the source water.

90. Upon information and belief, Defendant controls the water within its aqueous cooling water system to possess an MVM ion concentration in excess of the soluble silica concentration. WCTI believes this because its online monitoring system indicates that Defendant continues to operate the cooling water treatment system installed by WCTI and/or its authorized distributors or agents, with such monitoring indicating that that the water within the system is being controlled to possess a MVM ion concentration in excess of the soluble silica concentration.

91. Upon information and belief, Defendant elevates and maintains the pH of the water within its aqueous cooling water system such that the water possesses a pH of approximately 7.0 or greater. WCTI believes this because its online monitoring system indicates that Defendant continues to operate the cooling water treatment system installed by WCTI and/or its authorized distributors or agents, with such monitoring indicating that the pH of the water is being elevated and maintained at a pH of 7.0 or greater.

92. Upon information and belief, Defendant concentrates the source water and its natural silica content by evaporation of makeup water wherein the source water temperature is higher than the makeup water temperature, wherein the system water being circulated in contact with heat transfer surfaces that elevate the water to even higher temperatures. WCTI believes this because the cooling water treatment system installed by WCTI and/or its authorized distributors or agents operates by circulating system water with a heat transfer surface to elevate that circulating system water, and WCTI's online monitoring system indicates that Defendant continues to operate the cooling water treatment system to concentrate the source water and its natural silica content by evaporation and to control the system water temperature to

be higher than the makeup water temperature.

93.     Upon information and belief, Defendant, by performing the aforementioned steps, operatively transforms the natural silica content to corrosion inhibiting silica forms.   WCTI believes this because transformation of the natural silica content to corrosion inhibiting silica forms is the natural result that consequence flows from performance of the aforementioned steps within an aqueous cooling water treatment system.

94.     The continuing infringement of the '493 Patent by Defendant after receiving notice of the '493 Patent is willful, entitling Plaintiff to enhanced damages.

95.     Upon information and belief, by the acts of patent infringement herein complained of, Defendant has made substantial profits to which it is not equitably entitled.

96.     By reason of the aforementioned acts of Defendant, Plaintiff has suffered great detriment in a sum which exceeds this Court's jurisdictional amount, but which cannot be ascertained at this time.

97.     Upon information and belief, Defendants continue to infringe Plaintiff's '493 Patent, and will continue to infringe Plaintiff's '493 Patent to Plaintiff's irreparable harm, unless enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

A.     A judgment that Defendants have infringed, contributorily infringed, and/or induced infringement of each of the patents-in-suit;

B.     A judgment that Defendants' infringement of each of the patents-in-suit has been willful;

C.     A preliminary and permanent injunction, pursuant to 35 U.S.C. §283, enjoining Defendants, and all persons in active concert or participation with them,

**COMPLAINT FOR PATENT INFRINGEMENT & TREBLE DAMAGES**

from any further acts of infringement, contributory infringement or inducement of infringement of each of the patents-in-suit;

     D.     An order, pursuant to 35 U.S.C. §284, awarding Plaintiff damages adequate to compensate Plaintiff for Defendants' infringement of each of the patents-in-suit, in an amount to be determined at trial, but in no event less than a reasonable royalty;

     E.     An order, pursuant to 35 U.S.C. §284, trebling all damages awarded to Plaintiff based on Defendants' willful infringement of each of the patents-in-suit;

     F.     An order, pursuant to 35 U.S.C. §285, finding that this is an exceptional case and awarding to Plaintiff its reasonable attorneys' fees and expert witness fees incurred in this action; and

     G.     That Plaintiff have such other and further relief that the Court may deem just and proper.


Dated: September 8, 2016          FRISENDA QUINTON & NICHOLSON


By: _____
         Frank Frisenda
         Attorneys for Plaintiff
         WATER CONSERVATION
         TECHNOLOGY INTERNATIONAL, INC.

**COMPLAINT FOR PATENT INFRINGEMENT & TREBLE DAMAGES**

## DEMAND FOR JURY TRIAL

Plaintiff, Water Conservation Technology International, Inc. hereby demands a jury trial in this action.

Dated: September 8, 2016

FRISENDA QUINTON & NICHOLSON

By: _____
Frank Frisenda
Attorneys for Plaintiff
WATER CONSERVATION
TECHNOLOGY INTERNATIONAL, INC.

**COMPLAINT FOR PATENT INFRINGEMENT & TREBLE DAMAGES**